UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO. _____

GULFSIDE, INC.,

　*Plaintiff*,

v.

LEXINGTON INSURANCE COMPANY,

　*Defendant*.

_____/

## COMPLAINT

Plaintiff, Gulfside, Inc. sues Lexington Insurance Company and alleges:

### NATURE OF ACTION

This is an action seeking to compel Lexington to comply with its Policy's appraisal provision so that Gulfside can obtain a long-overdue determination of the covered damage it suffered as a result of Hurricane Irma. Gulfside seeks the Court's intervention to obtain complete relief, including retention of jurisdiction pending appraisal to enter other orders as may be necessary, such as appointment of an umpire (should the parties be unable to agree on one), entering judgment following appraisal, and to award the fees and costs Gulfside incurred in connection with these proceedings.

## JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the citizenships of the parties are diverse and the amount in controversy exceeds the sum of $75,000, exclusive of attorney's fees, interest, and costs.

3. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because the subject insurance policy was delivered by Lexington in Naples, Florida and all the acts giving rise to this action occurred in Naples, Florida, which is in this district.

4. All conditions precedent to the filing of this action have occurred or have been complied with.

5. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## PARTIES

6. At all material times, Lexington was a Delaware corporation, incorporated and domiciled in Delaware, with its principal place of business in Boston, Massachusetts. At all material times, Lexington engaged in the business of issuing insurance policies in Florida.

7. Gulfside is a condominium association located in Naples, Florida. At all material times, Gulfside was and is a Florida corporation organized and existing under the laws of the State of Florida with its principal place of business located in Naples, Florida.

## GENERAL ALLEGATIONS

### *The Coverage*

8. Lexington issued Gulfside Policy No. 41-LX -067988632-2/000 with effective dates of June 28, 2017 to June 28, 2018 (the "Policy"). A copy of the Policy is attached as Exhibit A.

9. The Policy provided Replacement Cost Coverage for windstorm-related losses. *Id*.

10. In the event the parties disagree about the amount of a given loss, the Policy requires them to proceed to appraisal where either party requests appraisal in writing:

> **Mediation Or Appraisal**
> If [Lexington] and [Gulfside]:
> \* \* \*
> B. Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire… The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to an umpire. A decision agreed to by any two will be binding.

*The Loss*

11. On September 10, 2017, Hurricane Irma struck Florida and caused significant damage to Gulfside.

12. On September 15, 2017, Gulfside reported the claim to Lexington.

13. Under the terms of the Policy and Florida law, Lexington was obligated to conduct a fair and complete investigation of the damages to the property upon notice of Gulfside's claim.

*Lexington Investigated the Claim and Conceded Coverage for the Loss*

14. On September 22, 2017, Lexington's field adjuster, Dean Gutierrez, inspected the property.

15. On October 26, 2017, a building consultant from JS Held, Michael Campbell, inspected the property and completed a loss assessment as part of Lexington's claim investigation.

16. On February 7, 2018, an engineer from Engineer Design & Testing (ED&T) Corporation, Richard Stogran, P.E., also inspected the property and completed a loss assessment in furtherance of Lexington's investigation.

17. On May 11, 2018, Lexington issued a claim determination based on its investigation of Gulfside's loss and mailed it to Gulfside. Lexington's Claim Determination is attached as Exhibit B.

18. Lexington's May 11, 2018 Claim Determination states that "[Mr. Gutierrez, Mr. Campbell, and Mr. Stogran] have completed their field investigations and loss assessment of Gulfside Inc.'s storm loss and damage. [Lexington's]

4

investigation confirmed evidence of direct physical loss and damage to the premises attributable to Hurricane Irma…" *Id*.

19. In its Claim Determination, Lexington conceded that at least some of Gulfside's loss was covered but concluded that the covered damage was only worth $532,973.37, which fell below Gulfside's $554,108.94 deductible. *Id*.

20. The same day, Lexington also sent a letter pursuant to Fla. Stat. § 627.7015 advising Gulfside of its right to participate in mediation, consistent with its obligations under Florida law where a covered loss has been incurred.

21. Gulfside disagreed with Lexington's quantification of the claim.

### *Gulfside is Forced to Evaluate its Loss Itself*

22. On April 19, 2018, Gulfside retained Keys Claims Consultants, LLC ("Keys").

23. On May 21, 2018, Keys responded to Lexington's Claim Determination and mediation notice *via* email requesting appraisal: "As you have offered Mediation, can we agree just to move forward with appraisal?"

24. Lexington did not respond.

25. With its property in need of extensive repair and its Association in disagreement with Lexington's estimate, Gulfside retained multiple experts to inspect and evaluate the damage to the premises.

26. After learning of Gulfside's undertaking to evaluate its loss, Lexington sent its experts out to conduct additional inspections.

27. In addition to its September 22, 2017 inspection by Mr. Gutierrez, its October 26, 2017 inspection by Mr. Campbell, and its February 7, 2018 inspection by Mr. Stogran, Lexington conducted two additional inspections of Gulfside on September 11, 2018 and December 11, 2018.

28. Gulfside provided Lexington with unfettered access to the property, including its books and records, upon each of Lexington's requests and at each of these inspections.

### *Lexington Agreed to and Paid the ACV of the Roof Loss, Again Conceding Coverage for the Loss*

29. In April 2019, Lexington and Gulfside reached an agreement as to the causation and value of Gulfside's roof damage, and Lexington emailed Gulfside an undisputed Sworn Statement in Proof of Loss (the "Undisputed POL") on which Lexington had already entered the agreed Actual Cash Value, Replacement Cost Value, and Applicable Depreciation values—which were based on the findings of Lexington's experts—for the roof.

30. Lexington paid Gulfside the Actual Cash Value listed on the Undisputed POL on June 20, 2019.

### *Gulfside Requests Appraisal Again on the Remaining Disputed Loss*

31. The parties were unable to reach an agreement as to the rest of Gulfside's damage, and, on July 16, 2019, Keys sent a letter to Lexington demanding appraisal on the remaining portion of Gulfside's claim. The appraisal demand enclosed a Sworn Statement in Proof of Loss ("POL") and 522 pages of reports, estimates, and invoices

that substantiated Gulfside's rebuttal valuation of its damages. Gulfside's Appraisal Demand (without the substantiating documentation) is attached as Exhibit C.

32. Keys requested that Lexington review the substantiating documentation and do one of two things pursuant to its obligations under the Policy: 1) If Lexington agreed with the POL, Keys requested that Lexington promptly issue payment; 2) If Lexington did not agree with the POL, Lexington was to consider the letter as Gulfside's formal written demand for appraisal. *Id*.

33. Up to and through July 16, 2019—the date Gulfside demanded appraisal—there were no outstanding requests for an EUO, documents, or any additional information or requests that would render appraisal unripe.

34. Under the terms of the Policy, Lexington was obligated to proceed to appraisal where, as here, Lexington and Gulfside disagreed as to the amount of the loss and either party made a written request for appraisal.

### *Lexington Refused to Go to Appraisal*

35. Lexington did not remit any payment, full or partial, towards Gulfside's POL rebutting Lexington's valuation of the covered loss.

36. Lexington also refused to comply with Gulfside's request for appraisal.

37. On August 6, 2019, Lexington responded, through counsel, to Gulfside's demand for appraisal. Instead of paying the POL amount or agreeing to proceed to appraisal, Lexington (inaccurately) alleged that it could neither accept nor reject the POL because "Lexington's investigation [was] still ongoing." Sims' August 6, 2019 Letter is attached as Exhibit D.

38.     Pursuant to its letter, Lexington sought an examination under oath (an "EUO") of Gulfside's corporate representative on over twenty topics. It also sought Gulfside's production of thirty-two categories of documents dating back to 2010. *Id*.

39.     This was the first time Lexington had made any such requests, but Lexington alleged that these new documents were "necessary to adjust [the] claim." Lexington also threatened to deny Gulfside's claim on the basis of non-compliance with the Policy should Gulfside fail to respond. *Id*.

40.     These requests were not necessary to adjust the claim, as Lexington had already adjusted the claim and reached its Claim Determination fifteen months earlier on May 11, 2018. The requests were overbroad, retaliatory, and designed to delay or avoid the appraisal process.

### *Gulfside Permits More Inspections*

41.     In a continued attempt to resolve the claim, Gulfside permitted Lexington to conduct another round of inspections in September 2019.

42.     Lexington brought in two teams of three (a licensed engineer, a window expert, and a building consultant) who spent four full days at Gulfside, with Gulfside and its experts, jointly inspecting and conferring on every unit at the property.

### *The First Lawsuit: Gulfside Files Suit to Compel Lexington to Participate in Appraisal*

43.     Frustrated by Lexington's lack of response and punitive voluminous requests, Gulfside retained the undersigned in October 2019.

44. On November 4, 2019, Gulfside filed a Complaint for Declaratory Relief Compelling Appraisal (Count I) and Breach of Contract (Count II) in Collier County, Florida Circuit Court.

45. On November 11, 2019, Lexington assigned a new adjuster, Robert Wissman, to the Gulfside file.

46. On November 19, 2019, Mr. Wissman emailed Keys about the parameters of damages to address at appraisal, indicating he agreed the claim was ripe for appraisal.

47. A few days later on November 21, 2019, Lexington's attorneys attempted to retract Mr. Wissman's representations in a letter to Gulfside's counsel.

48. On December 6, 2019—less than a month after Gulfside filed suit—Lexington denied Gulfside's claim.

49. After two years of litigation that included multiple depositions and voluminous document discovery, the parties filed cross-motions for summary judgment on Gulfside's right to appraisal.

50. On August 6, 2021, the Court dismissed Gulfside's declaratory count seeking to compel appraisal without prejudice on the grounds that it was premature. The Court's August 6, 2021 Order is attached as Exhibit E.

51. The Court found that the Policy's "No Action" Clause required Gulfside to sit for the EUO before it could properly file suit against Lexington. The Court only ruled on Gulfside's failure to sit for the EUO as a condition precedent to <u>filing suit</u>; it did not make a finding of Gulfside's right to appraisal. With respect to appraisal, it

9

only held that "Gulfside can comply with any post-loss conditions, then refile suit."

*Id*.

52. Pursuant to the Court's Order, Gulfside contacted Lexington *via* letter on August 13, 2021 to schedule the EUO:

> Pursuant to the Court's August 6, 2021 Opinion and Order and our conversation yesterday, please state whether Lexington still seeks to take Gulfside's Examination Under Oath. Lexington took Gulfside's deposition on March 18, 2021 regarding the topics set forth in its Schedule A attached herein. Please let us know whether Lexington will make repeat inquiry as to those topics and which additional topics, if any, will be addressed at the EUO so Gulfside can designate the appropriate representative. Please also provide your availability to conduct the EUO *via* Zoom in the next thirty days.

53. Lexington did not provide its availability in the ensuing thirty days.

54. In late August, both parties moved the Court to reconsider its August 8, 2021 Order.

55. In its motion for reconsideration, Lexington confirmed that it "has not offered to withdraw its [claim denial] and invite [Gulfside] to sit for an EUO."

56. On September 22, 2021, the Court issued an amended order confirming its reasoning for dismissing Count I with prejudice. The Court's September 22, 2021 Order is attached as Exhibit F.[1]

57. The Court again found that Gulfside's *lawsuit*—not its demand for appraisal—was premature. *Id*.

---

[1] The Court entered judgment in favor of Gulfside on its Breach of Contract count (Count II). Following the Judgment, the Parties entered into a settlement agreement as to the amounts owed for Gulfside's roof claim.

58. It reiterated that "[s]hould Gulfside sit for an EUO and refile, Lexington could again raise an affirmative defense for noncompliance with post-loss conditions. At that point, the parties would need to litigate whether Gulfside's belated compliance with the Policy was substantial compliance." *Id*.

59. On October 29, 2021, Gulfside's counsel contacted Lexington's counsel *via* telephone to again request a status on Lexington's desire to take the EUO. None was provided.

60. On November 9, 2021, Lexington sent a letter responding to Gulfside's requests to schedule the EUO, wherein Lexington stated that it will continue to stand on its claim denial (even though it was rejected by this Court) and does not desire Gulfside's EUO. Lexington's November 9, 2021 Claim Denial is attached as Exhibit G.

61. This suit followed.

62. As of the date of filing this Complaint, there are no outstanding EUO requests.

63. As of the date of filing this Complaint, there are no outstanding inspection requests.

64. As of the date of filing this Complaint, there are no outstanding document requests.

65. Gulfside has produced all the documents requested by Lexington. The document production totals 5,682 pages and spans 31 categories of information.

Lexington has raised no objections—formally to the Court or informally to Gulfside— about the production's completeness.

66. All post-loss obligations have been fulfilled, all preconditions to suit have been met, and appraisal is ripe.

67. Lexington's claim denial establishes the ripeness of the matter for appraisal. **The denial does not dispute that the loss is covered**. Instead, it cites disagreements as to the scope of damage and questions whether some of it pre- or post-date Hurricane Irma. *See* Lexington's November 9, 2021 Claim Denial, Exhibit G.

68. The Florida Supreme Court and its twenty-year state and federal progeny are clear that "when the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid." *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002).

69. Lexington's latest claim denial and refusal to proceed to appraisal are pretextual. It is not merit-based, nor is it the type of claims handling contemplated by the Policy's equitable mechanism for appraisal. It is another punitive measure designed to prevent its insureds from obtaining a fair valuation of a covered loss.

70. The Policy constitutes an enforceable contract under Florida law, and all conditions precedent to enforcing the Policy have been performed, were waived, or have otherwise occurred.

## COUNT I
## DECLARATORY JUDGMENT CONFIRMING GULFSIDE'S COMPLIANCE WITH POST-LOSS OBLIGATIONS

71. Gulfside re-alleges Paragraphs 1 through 70.

72. Pursuant to Chapter 86 of the Florida Statutes, Gulfside seeks this Court's declaration concerning Gulfside's compliance with the Policy's post-loss obligations in connection with its claim for Hurricane Irma damages.

73. The Parties disagree on the amount of covered loss to the Covered Property, and Gulfside properly invoked the Appraisal Clause on July 16, 2019.

74. The Policy's Appraisal Clause constitutes a valid and binding agreement to resolve disputes between the parties regarding cause and amount of loss.

75. Florida law requires an insurer to proceed to appraisal where an insured (1) substantially satisfies all post-loss obligations reasonably imposed by its insurer and then (2) demands appraisal in writing.

76. Gulfside complied with all post-loss obligations Lexington imposed up to and through July 16, 2019.

77. Gulfside demanded appraisal in writing on July 16, 2019.

78. Lexington thereafter failed to proceed to appraisal despite being required to do so by the Policy. Instead, Lexington issued document requests and demanded an EUO.

79. Gulfside filed suit to determine its obligation to respond to these requests, contending they were punitive in nature and designed only to delay participation in the appraisal process to which Gulfside was contractually entitled.

80. During discovery in the First Lawsuit, Gulfside complied with Lexington's document requests and sat for a corporate representative deposition that

was duplicative of the EUO request. Lexington did not renew its EUO request during the First Lawsuit.

81. The Court dismissed the First Lawsuit without prejudice because it found that Gulfside's pre-suit appearance at the EUO was a precondition to suit under the Policy's "No Action" clause.

82. Within a week of the Court's Order dismissing the case without prejudice, Gulfside requested Lexington to provide dates for the EUO.

83. Lexington indicated several times thereafter that it had withdrawn its request for Gulfside's EUO.

84. Lexington has not requested performance of any additional post-loss obligations since the conclusion of the First Lawsuit and the date of this Complaint.

85. There are no outstanding EUO requests.

86. There are no outstanding inspection requests.

87. There are no outstanding document requests.

88. Lexington still refuses to proceed to appraisal.

89. Due to Gulfside's compliance with the Policy's terms and Lexington's conduct in contravention thereof, a present controversy exists between the parties appropriate for declaratory relief.

WHEREFORE, Gulfside, Inc. respectfully requests that this Court enter a declaratory judgment stating that Gulfside, Inc. substantially complied with all post-loss obligations that arose out of its claim for Hurricane Irma damages and were issued as of the date of this Complaint and awarding the costs of this action, pre- and post-

judgment interest, statutory attorney's fees and costs pursuant to Fla. Stat. § 627.428 and/or § 626.9373, and any further relief this Court deems equitable, just, and proper.

## COUNT II
## DECLARATORY JUDGMENT COMPELLING APPRAISAL

90. Gulfside re-alleges Paragraphs 1 through 70.

91. Pursuant to Chapter 86 of the Florida Statutes, Gulfside seeks this Court's declaration concerning Lexington's duties and responsibilities under the Policy with respect to the Hurricane Irma claim.

92. There exists an ongoing and justiciable dispute between Gulfside and Lexington concerning the amount of the covered Loss and Lexington's failure to comply with the Policy's terms and obligations.

93. The Policy's Appraisal Clause constitutes a valid and binding agreement to resolve disputes between the parties regarding cause and amount of loss.

94. The Parties disagree on the amount of covered loss to the Covered Property, Gulfside properly invoked the Appraisal Clause and named its appraiser, and no outstanding post-loss obligations exist.

95. Gulfside categorically complied with all post-loss obligations up to and through the date of its proper invocation of appraisal.

96. Gulfside has also complied and/or substantially complied with all the additional requests Lexington imposed <u>after</u> Gulfside's proper invocation of appraisal.

97. Lexington has wrongfully failed to proceed to appraisal despite being required to do so by the Policy.

98. Due to Lexington's conduct in contravention of the Policy's terms, a present controversy exists between the parties appropriate for declaratory relief.

99. Gulfside respectfully requests that this Court enter an Order compelling Lexington to participate in the appraisal process as required by the terms of the Policy.

WHEREFORE, Gulfside, Inc. requests that this Court enter a declaratory judgment stating:

(a) That Lexington must submit to appraisal pursuant to the Appraisal Clause;

(b) That Lexington must appoint an appraiser pursuant to the Appraisal Clause;

(c) That the Court retains jurisdiction to enter any orders relating to the appraisal process and to enter a judgment following appraisal confirming the award and compelling its payment; and

(d) That the Court will reserve jurisdiction to determine Gulfside's entitlement to and the amount of an award of the costs of this action, pre- and post-judgment interest, attorney's fees and costs pursuant to Fla. Stat. § 627.428 and/or § 626.9373, and all other relief that this Court deems equitable, just, and proper, including amendment of the pleadings as necessary to add additional contingent causes of action against Lexington.

### COUNT III
### BREACH OF CONTRACT
### (ALTERNATIVE PLEADING)

100. Gulfside re-alleges Paragraphs 1 through 70.

101. At all times material to this action, Gulfside was insured under the Policy, by which Gulfside obtained commercial residential windstorm coverage in consideration of paying a substantial premium. The Policy is an enforceable contract under the laws of the State of Florida.

102. All conditions precedent for coverage under the Policy have been satisfied.

103. The Policy imposed certain obligations upon Lexington, including the mandatory obligation to proceed to appraisal where the parties disputed the amount of damage and one party requested appraisal in writing.

104. Lexington failed to satisfy its contractual obligations under the Policy, and thus breached the contract, by those acts and omissions alleged herein, including without limitation its refusal to proceed to appraisal.

105. No exclusions or other limitations apply.

106. As a direct, foreseeable, and proximate result of Lexington's breach of its obligations under the Policy, Gulfside has suffered and continues to suffer damages.

WHEREFORE, Gulfside, Inc., pleading in the alternative, demands judgment against Lexington Insurance Company for damages totaling the full amount of the covered Loss, the costs of this action, pre- and post-judgment interest, statutory attorney's fees and costs pursuant to Fla. Stat. § 627.428 and/or § 626.9373, and any further relief this Court deems equitable, just, and proper.

## **DEMAND FOR JURY TRIAL**

Gulfside, Inc. demands a trial by jury on all issues so triable.

*Gulfside, Inc. v. Lexington Ins. Co.*

Respectfully Submitted,

VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr., Esq.**
Florida Bar No. 79170
**Arya Li, Esq.**
Florida Bar No. 58847
**Allie C. Watson, Esq.**
Florida Bar No. 1019019
smarino@vpm-legal.com
ali@vpm-legal.com
awatson@vpm-legal.com
jpacheco@vpm-legal.com
*Counsel for Gulfside, Inc.*